**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| RONNELL RAY WARNER | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-12-248 |
| LINO QUILO, M.D. | * | |
| Defendant | * | |

\*\*\*

## <u>MEMORANDUM</u>

Ronnell Warner, an inmate at the State of Maryland's Eastern Correctional Institution ("ECI"), filed suit against Lino Quilo, M.D.,[1] defendant, under 42 U.S.C. § 1983, alleging violation of his rights under the Eighth Amendment to the United States Constitution. Dr. Quilo has filed a motion to dismiss or, in the alternative, for summary judgment. ECF 10. In addition to a supporting legal memorandum, ECF 10-1, defendant submitted the Affidavit of Lino Quilo, M.D. (ECF 10-2, Ex. A) and plaintiff's medical records (ECF 10-3, Ex. B). No opposition has been filed.[2] A hearing is unnecessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Mr. Warner is a diabetic who was, at all times relevant, incarcerated at ECI. ECF 1 at p. 4. He states that on December 24th[3] he was given an IV (intravenous) drip consisting of 5%

---

[1] Defendant's name is improperly spelled as "Quillo" in the complaint and on the docket. *See* ECF 10.

[2] Plaintiff was advised of his right to file an opposition to the dispositive motion and of the consequences of failing to do so. *See* ECF 11; *see also Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).

[3] Plaintiff did not specify the year but, based on his filing of suit in January 2012 and other matter, it appears that defendant meant December 24, 2011.

dextrose and 45% sodium chloride. According to Warner, this was "sugar water." *Id.* Plaintiff claims that Dr. Quilo assured him that he would feel better once he was hooked up to the IV. Yet, Warner alleges that his sugar levels "went over 500" and he went into "D.K.A. due to the I.V."[4] *Id.* Warner was admitted to Peninsula Regional Medical Center ("PRMC") in Salisbury, Maryland, where he remained for two days. Warner faults Dr. Quilo's administration of "sugar water" through his IV for his condition, which he claims could have caused him to go into a coma or suffer organ damage. *Id.*

Defendant asserts that Warner has insulin-dependent diabetes mellitus with "very labile ― or, highly fluctuating ― blood sugar readings." Ex. A, ¶ 3. From December 5, 2011, through December 29, 2011, Warner's blood sugar fluctuated between a high of 600 mg/dl to a low of 39 mg/dl. The December 9, 2011 blood sugar reading of 35 mg/dl indicated severe hypoglycemia (low blood sugar). Ex. A at 2; Ex. B at 1 – 4, 6 – 13, 15 – 16, 19, 34 – 37, and 39 – 40. According to Dr. Lino, if untreated, it can lead to death. Ex. A, ¶ 3.

On December 23, 2011, Warner's finger-stick blood sugar indicated a level of 518 mg/dl. Based on that reading, Dr. Paul Matera prescribed regular insulin, which is short-acting, to control the hyperglycemia (high blood sugar) and advised Warner to return to the dispensary after eating dinner to have his blood sugar re-tested. When Warner returned after dinner his blood sugar was tested and found to be 502 mg/dl. Dr. Matera then ordered Warner's admission to the infirmary for treatment of hyperglycemia and to rule out DKA. An IV of saline solution was also ordered to correct Warner's dehydration. Ex. A, ¶ 4; Ex. B at 1, 4, 5, and 39 – 40.

After Warner was admitted to the infirmary he stated that he did not want to be treated and refused to talk to anyone. However, the following day, December 24, 2011, he allowed his

---

[4] DKA is the medical abbreviation for diabetic ketoacidosis, an acute, life threatening complication of diabetes. *See* ECF 10 at p. 2, fn. 1.

blood sugar to be tested and agreed to take the insulin that was ordered, but continued to refuse all other care. Warner's blood sugar continued to fluctuate and he continued to consent to take insulin but refused to allow treatment with IV fluids. In light of Warner's refusal, Dr. Quilo encouraged Warner to drink fluids. On the afternoon of December 24, 2011, Warner agreed to the administration of IV saline solution, as previously ordered. After one liter of the solution was infused, however, Warner refused to accept the second. Thus, Warner's IV catheter was discontinued. He also refused to have his vital signs checked, but continued to accept insulin as needed. Ex. A, ¶ 5; Ex. B at 6, 9, and 11- 13.

On December 25, 2011, Warner reported that he was vomiting and experiencing muscle pain. Warner's blood sugar was tested and determined to be 597 mg/dl. Therefore, he was given another IV infusion of saline solution. After receiving insulin and the IV, Warner's blood sugar decreased to 518 mg/dl. His IV was changed at that time to prevent fluid overload. But, later that evening, Warner's blood sugar was again greater than 600 mg/dl and he was vomiting heavily. Dr. Matera was notified and Warner was sent to the Emergency Department of PRMC. Ex. A, ¶ 6; Ex. B at 14, 15, and 18.

Warner was admitted to PRMC for impending DKA, acute renal failure, hypertension, and uncontrolled diabetes mellitus. Upon discharge on December 28, 2011, he returned to ECI, where he was admitted to the infirmary. He was again treated with an IV of saline solution until his blood sugar levels were stable. Ex. A, ¶ 7; Ex. B at 20 and 33.

Dr. Quilo maintains that the medical records refute Warner's allegation that a nurse at PRMC told him his IV contained dextrose, which is contraindicated for a patient with an elevated blood sugar level or DKA. Moreover, Dr. Quilo denies that he ordered the

administration of dextrose.[5]  Ex. A, ¶ 8.

## Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

---

[5] Defendant explains, however, that administration of dextrose and saline in an IV solution is appropriate when a diabetic patient is receiving IV insulin and blood sugar levels are close to normal levels.  ECF 10 at Ex. A.

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also*

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).[7]

---

*Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

[7] Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit

Plaintiff has not filed an opposition to the motion. Nor has he filed an affidavit under Rule 56(d).[8] In my view, it is appropriate to address the defendant's motion as one for summary judgment.

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

In resolving the motion, the court should "view the evidence in the light most favorable to

---

must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

[8] If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

6

. . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). However, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must also abide by the " 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.' " *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim based on the denial of medical care, however, a

plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The subjective component requires "subjective recklessness" in the face of a serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (*quoting Farmer,* 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the course of action must be judged in light of the risk known to the defendant at the time. *Brown* 240 F. 3d at 390 (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

The undisputed record establishes that Warner's serious medical condition was addressed in a timely and appropriate manner. To the extent his condition worsened while he was admitted to the ECI infirmary, he cannot hold Dr. Quilo responsible for that decline in light of his refusal to cooperate with medical intervention. Additionally, Warner's allegation that he was given the

improper solution in his IV is unsupported by the medical records, and he has failed to dispute by affidavit or other evidence that defendant's assertions are untrue. Thus, defendant is entitled to summary judgment in his favor.

    A separate Order follows.

Date: July 26, 2012                                /s/_____
                                                                Ellen L. Hollander
                                                                United States District Judge